UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY G. HARRIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | )  No.: 17-cv-2075-MMM |
| | ) |
| **VICTOR P. CALLOWAY,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

Plaintiff, proceeding *pro se*, asserted a 42 U.S.C. § 1983 action for retaliation against Defendants Warden Calloway and Lt. Campbell at the Danville Correctional Center ("Danville").  Plaintiff has filed a motion for summary judgment [ECF 36] to which Defendants have filed a Motion to Strike [43].  Defendants have filed their own motion for summary judgment [ECF 47] to which Plaintiff has replied and Defendants have responded.

Plaintiff subsequently filed [ECF 57], identified as a Declaration but which appears to be a surreply to Defendants' reply to summary judgment.  The Local Rules do not authorize the filing of a surreply. *Cummings, Inc. v. TAS Distributing Co., Inc.*, 676 F. Supp. 2d 701, 705-76 (C.D.Ill. 2009).  Plaintiff did not ask leave of Court and the Court sees no need for a surreply as Plaintiff has filed a motion for summary judgment, a response to the motion to strike his summary judgment and a response to Defendants' summary judgment.  *See Ripmax Ltd. v. Horizon Hobby, Inc.*, No. 07-2133, 2008 WL 4534068, at *3 (C.D. Ill. Oct. 7, 2008) ("'at some point, briefing must end.'")  [ECF 57] is STRICKEN.

For the reasons indicated herein Defendants' Motion to Strike is DENIED. Plaintiff's motion for summary judgment [ECF 36] is GRANTED while  Defendants' motion for summary judgment [ECF 47] is DENIED.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

On or around April 26, 2016, Plaintiff was transferred to Danville where his "no soy" diet was not renewed. As Plaintiff was avoiding soy, he began buying food from the commissary. He alleged, however, that while the commissary is allowed a 25% markup on the goods it sells, it went way well beyond that, overcharging him. Plaintiff wrote letters and grievances regarding the allegedly inflated commissary prices. He also complained to his daughter, Amanda Carrasco, who, in September 2016, posted details of the "illegal treatment" on a "Free Larry Rocky Harris" Facebook page. Ms. Carrasco's posting identified Supply Supervisor Kinney by name, alleging that he had engaged in fraud. On October 23, 2016, Ms. Carrasco made an additional posting on this site.

On an unidentified date, Defendant Campbell spoke with Plaintiff, requesting that his daughter remove Kinney's name from the posting. Plaintiff claimed to have no knowledge of Ms. Carrasco's posting and no control over the content. There is no dispute, however, but that Ms. Carrasco subsequently modified Kinney's name to "K*****".

Plaintiff asserts that Defendants retaliated against him after the second Facebook posting, as on October 25, 2016, Defendant Campbell issued him a citation for "threats and intimidation" and did so at the direction of Warden Calloway. In the citation, Defendant Campbell alleged that the Facebook postings created a hostile work environment for staff. On November 10, 2016, the charges went to an Adjustment Committee hearing and Plaintiff was found guilty. On December 23, 2016, however, the guilty finding was overturned and expunged by the Administrative Review Board ("ARB").

In the meantime, on December 7, 2016, Plaintiff was transferred to the Big Muddy River Correctional Center, where he was held in segregation from October 25, 2016 through December

17, 2016. Plaintiff alleges that the transfer was ordered by Defendants Calloway and Campbell and was in retaliation for Plaintiff's First Amendment activity in complaining about the commissary charges.

The Court issued a merit review of Plaintiff's complaint dismissing the due process claim with prejudice, as the expungement had provided Plaintiff all the process he was due. *Sanchez v. Godinez,* No.14-275, 2014 WL 1097435 at *2 (S.D. Ill. March 20, 2014). The Court also determined that Plaintiff, a nonlawyer, could not proceed on the perceived claim seeking redress for his family members' First Amendment rights. As Plaintiff had disavowed the internet postings, it was determined that his own free speech rights were not at issue. He was allowed to proceed, however, on the claim that he suffered retaliation for complaints made about the conditions of confinement, including the Facebook postings.

Defendants assert that Plaintiff actually had control over the content of the Facebook page as Kinney's name was obscured after Defendant Campbell requested this of Plaintiff. They assert, further, that the Facebook posting contained a verbatim excerpt from a June 25, 2016 letter Plaintiff had written to Ms. Carrasco. Defendants note that no disciplinary action was taken until Officer Kinney complained of the second Facebook posting which alleged that he removed items from the commissary out of spite, cheated prisoners and was stealing taxpayer funds. Officer Kinney submitted an incident report claiming that, as inmates had access to view these allegations, he had concerns for his personal safety.

On October 25, 2016, Internal Affairs intercepted a letter from Plaintiff to his daughter in which he commended her actions in exposing the allegedly illegal activity. Plaintiff was issued the previously identified disciplinary report that day and, on October 31, 2016, was issued a follow-up disciplinary report. This charged that Plaintiff "contacted his daughter Amanda

3

CARRASCO, via the mail, to inform her to utilize the social media in order to create unwanted attention toward CSSII KINNEY... HARRIS utilizes the threat of contacting the governor's office, Attorney General's office, social media, and civil action in an attempt to manipulate staff and the prison administration to get what he wants."

In his motion for summary judgment, Plaintiff makes the new allegation that the October 25, 2016 ticket, which was to be expunged pursuant to the ARB's December 23, 2016 order, was not expunged until October 10, 2018. Plaintiff claims "unknown reasons" for the delay and does not clearly implicate either Defendant. He claims, however, that on an unidentified date, he brought this to the attention of Defendant Campbell who failed to resolve the matter. Plaintiff asserts, without further explanation, that on March 8, 2017, he underwent a subsequent retaliatory transfer for to the Shawnee Correctional Center, due to the unexpunged October 25, 2016 ticket. He further claims that there, he was denied a prison job as a welder due to the active ticket. These claims, however, goes beyond the allegations of Plaintiff's complaint and are not considered here. *Hancock v. Potter*, 531 F.3d 474, 480 (7th Cir. 2008) (alleging new factual theories at summary judgment is an impermissible attempt to amend the complaint and may be denied by the Court.)

In his motion for summary judgment, Plaintiff asserts that it was his daughter, not he, who made the Facebook postings and denies that it was done at his direction. Plaintiff asserts that, even if it were otherwise, the Facebook postings would not provide a basis for the disciplinary action taken against him. Plaintiff cites *Cassels v. Stalder*, 342 F. Supp. 2d 555, 564 (M.D. La. 2004) which found that, while prison officials had "legitimate security concerns with regard to the spreading of rumors and false information about employees…," these concerns did not justify the enacting of a vague rule prohibiting such conduct.

4

## MOTION TO STRIKE

Defendants have filed a motion to strike Plaintiff's motion for summary judgment [ECF 43]. Defendants assert that, despite the Court's merit review order, Plaintiff continues to assert a First Amendment claim on behalf of family members. Plaintiff has filed a response asserting that he pursues a First Amendment claim only on his own behalf even though he asserts, in part, "there is no doubt to the retaliation here to silence the Plaintiff, and his family and friends, from exercising their first amendment right to seek redress of grievances with the government." [ECF 36 page 15]. Plaintiff is mistaken, however, as he is not proceeding on a claim regarding his right to free speech as he denies that it was his speech to begin with. The issue is whether Plaintiff suffered retaliation for complaining about prison conditions. This will necessarily entail inquiry into the nature of the speech as, if it were not constitutionally protected, punishment for it would not amount to retaliation.

While there appears to be some merit to Defendants' Motion to Strike, this issue is complex and the Court has an obligation to liberally construe a *pro se* plaintiff's arguments. The Court is well able to disregard those averments which are not consistent with the merit review order and chooses to do so here, rather than strike Plaintiff's motion for summary judgment.

Defendants make the further assertion that Plaintiff is attempting to revive the due process claim dismissed at merit review. While Plaintiff does assert that he was wrongfully convicted, suffering punishment and a retaliatory transfer, the Court views these allegations as offered in support of the retaliation claim, that the retaliation he suffered would likely quell future First Amendment activity. As a result, the Court does not view Plaintiff's motion as an attempt to revive the due process claim. Accordingly, Defendant's motion to strike [ECF 43] is DENIED.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants assert that the speech for which Plaintiff was disciplined was not protected First Amendment activity and cannot, therefore, be the basis for a retaliation claim. As noted, Defendants claim that the Facebook postings are attributable to Plaintiff. They claim, further, that the postings were "inappropriate," antagonistic to legitimate penological interests and not constitutionally protected speech. Defendants cite cases which hold that a prisoner does not have a First Amendment right to use insulting, threatening, or false language, in a prison grievance or letter. *Clark v. Gipson*, WL 328966, *3 (C.D. Ill. Jan. 26, 2015) *citing Hale v. Scott,* 371 F.3d 917 (7th Cir. 2004). They assert, further, that prisoners do not have a constitutional right to challenge prison conditions in a manner that creates security risks, such as circulating a petition. *May v. Libby,* 256 Fed.Appx. 825, 829 (7th Cir. 2007). Defendants claim that "[u]pdating a public Facebook post that is readily available to the inmate population is akin to circulating a petition within the prison." They offer no caselaw, however, to support the suggested kinship between petitions circulated in a prison and complaints posted on Facebook, and the Court has found none.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere

allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party." *Laskin v. Siegel*, 728 F.3d 7314, 734 (7th Cir. 2013) (internal quotation marks omitted).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 261 (1968)(Brennan, J., dissenting) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## ANALYSIS

Prisoners have a protected First Amendment right to file grievances and to speak about the conditions of their confinement. *Dobbey v. IDOC,* 574 F.3d 443, 446 (7th Cir. 2009) (regardless whether inmate's grievance was a "personal gripe," inmate's speaking out on issue was a protected First Amendment activity). Filing a grievance—even an oral one—is protected speech. *Pearson v. Welborn,* 471 F.3d 732, 741 (7th Cir. 2006). A prisoner may not be

7

disciplined for voicing such complaints as "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

To establish First Amendment retaliation, Plaintiff must successfully allege that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was a "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Defendants assert that the internet postings, allegedly controlled by Plaintiff, contained "insulting and untruthful information about officer Kinney and the operations of the commissary at Danville." As such, they allegedly went beyond merely complaining of prison conditions, touching on important safety and security concerns. Defendants cite *Turner v. Safley,* 482 U.S. 78, 89 (1987), which held that prison regulations restricting inmates' rights were constitutionally valid if related to legitimate penological interests. Here, Defendants offer the underdeveloped argument that the Facebook postings jeopardized Officer Kinney's safety and jeopardized institutional security. Defendants do not reveal, however, that the Officer Kinney was threatened or harmed, or in what way security was, or might have been, compromised.

Contrary to Defendants' position, it has been recognized that the investigation of misconduct by prison officials actually furthers a legitimate penological objective. "[T]ruthfully answering questions concerning a misconduct investigation against a correctional officer is undoubtedly quite consistent with legitimate penological objectives." *Bridges v. Gilbert*, 557 F.3d 541, 551–52 (7th Cir. 2009)(internal citation omitted). It has also been determined that

prisoners' allegations of corruption are matters of public concern. *Wilson v. Greetan*, 571 F. Supp. 2d 948, 957 (W.D. Wis. 2007). As the Supreme Court noted in *Snyder v. Phelps*, 562 U.S. 443, 45, (2011), speech directed to matters of public concern "is entitled to 'special protection' under the First Amendment.'"

Speech on matters of public concern "cannot be restricted simply because it is upsetting or arouses contempt. 'If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.'" *Snyder*, 562 U.S. at 45 (internal citations omitted). Furthermore, restrictions on inmates' speech must operate in a "neutral fashion, without regard to the content of the expression." *Turner,* 482 U.S. at 90. Here, Defendants admittedly took disciplinary action due to the content in the Facebook postings as evident in the two disciplinary citations. While Defendants have vaguely asserted an overriding penological interest, they have failed to establish that any such interest outweighed the "special protection" afforded issues of public concern, such as those dealing with official corruption.

The Court takes no position as to whether Officer Kinney engaged in illegal activity, and this issue is not before it. However, Defendants' bare assertions that the claims are untrue are insufficient to obviate the special constitutional protection afforded such speech.

It is noted that there remains a contested issue as to whether the Facebook postings were made at Plaintiff's direction. If so, the postings concerned issues of public interest and are entitled to First Amendment protection, with the result that any related punishment would amount to retaliation. If the postings were not made at Plaintiff's direction, then Defendants' belief as to that was mistaken. Defendants remain potentially liable for retaliation, however, even if their belief as to Plaintiff's involvement in the protected activity was mistaken. *See*

9

*Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412 (2016) (employer liable for retaliatory action taken in mistaken belief that Plaintiff had participated in constitutionally protected political activity).

As the Court has determined that the statements attributed to Plaintiff were constitutionally protected, Plaintiff has established the first element for a retaliation claim. This is so even though Plaintiff denies that the protected speech was his, as Defendants proceeded on the supposedly mistaken belief that it was. *Id*. The second element Plaintiff must establish is that he suffered a deprivation likely to deter future First Amendment activity. Plaintiff has pled that he was subject to a retaliatory transfer to Big Muddy where he was exposed to conditions harsher than those that at Danville. This is sufficient to establish a deprivation likely to chill future constitutional activity. The third element, that the activity was at least a motivating factor in Defendants' actions, is something to which Defendants have essentially admitted in the disciplinary charges filed against Plaintiff.

The Court finds that Defendants have failed to identify material issues of fact to support that the speech attributed to Plaintiff was so contrary to penological interests that it was not constitutionally protected. This, particularly, as the speech concerned allegations of official corruption at the institution. As the speech was constitutionally protected, and as Defendants admittedly disciplined Plaintiff for it, they engaged in retaliation in violation of the First Amendment. Defendants, however, assert that they may not be held in this case as they are entitled to qualified immunity.

## QUALIFIED IMMUNITY

"[A] Defendant is entitled to qualified immunity from money damages for his discretionary actions if his conduct does not violate any clearly-established constitutional rights."

*Winston v. Walls*, No. 09-2038, 2010 WL 3938191, at *3 (C.D. Ill. Sept. 30, 2010) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (qualified immunity is "an *immunity from suit* rather than a mere defense to liability…") (emphasis in original).

Whether to apply qualified immunity is a question of law reserved for the judge, not jury. *McKinley v. Trattles*, 732 F.2d 1320, 1324 (7th Cir. 1984) citing *Harlow*, 457 U.S. at 818–19. An issue of law is raised "[w]hen the district court denies qualified immunity at summary judgment because the plaintiff's evidence, if believed by a trier of fact, would suffice to show a constitutional violation, and the court concludes that the governing rule is well established…" *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011); *Saucier*, 533 U.S. at 200.

It is clear that prisoners have a well-recognized "right to seek administrative or judicial remedy of conditions of confinement, as well as the right to be free from retaliation for exercising this right." *Babcock v. White,* 102 F.3d 267, 276 (7th Cir.1996). Here, Defendants admittedly disciplined Plaintiff for his complaints about the commissary, including the Facebook postings. As the Court has previously noted, this is sufficient to establish a violation of Plaintiff's First Amendment right not to suffer retaliation for complaining of prison conditions.

The Court now reviews the second element identified in *Saucier*, whether the constitutional right at issue was clearly established. Defendants claim that they viewed the Facebook postings as contrary to legitimate penological interests and, in furtherance of those interests, justifiably disciplined Plaintiff. They assert that finding that their conduct amounted to retaliation "would be a new formulation of the law…" The Court disagrees. Qualified immunity "protects public employees who make reasonable errors in applying even clearly established

11

law" *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011).  It will not apply, however, where "it is obvious that no reasonably competent officer would have concluded" that his conduct was lawful.  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  The Court does not find that a reasonable individual in Defendants' positions would have been unaware that punishing a prisoner for Facebook postings alleging misconduct and corruption at the institution would violate his constitutional rights.  *Winston*, 2010 WL 3938191, at *3.  As a result, the Court finds that Defendants are not entitled to qualified immunity.

As the Court's finding as to qualified immunity is made as a matter of law, it is a final and appealable order.  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.")  So, too, an appeal of this finding must be based on a contested issue of law, not fact.  The Seventh Circuit has articulated that such an appeal, if asserting contested issues of fact, will be regarded "as an early way to test the sufficiency of the evidence ... In such a case, where there really is no legal question, we will dismiss the appeal for lack of jurisdiction." *Jones*, 630 F.3d at 680.

**IT IS THEREFORE ORDERED:**

1.      Defendants' Motion to Strike [ECF 43] is DENIED.  Plaintiff's Declaration construed as a surreply to Defendants' reply to summary judgment [ECF 57], is STRICKEN as superfluous and filed without leave of court.

2.      Plaintiff's motion for summary judgment [ECF 36] is GRANTED as Plaintiff has established that there is no contested issues of fact but that he was disciplined, not in furtherance

of legitimate penological interests, but in retaliated for his complaints about prison conditions, in violation of his First Amendment rights.

     3.    Defendants' motion for summary judgment [ECF 47] is DENIED. The Court's denial of the qualified immunity defense asserted therein is based on an issue of law and is immediately appealable under 28 U.S.C. § 1291.

     4.    The parties are to file a Notice of Compliance within 30 days, advising the Court of any outstanding matters, indicating whether the case can be scheduled for jury trial on the damages issues. In the alternative, if the parties wish to explore settlement, they are to so indicate in the Notice Compliance and the matter will be referred to the Magistrate for a settlement conference.

ENTERED: 9/30/2019

                                              s/Michael M. Mihm
                                              MICHAEL M. MIHM
                                        UNITED STATES DISTRICT JUDGE